UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORY T. O'BRIEN,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SAJIB SAHA, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 19-cv-01957-JLS (JLB)<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF A MEDICAL EXPERT [ECF No. 16];**<br><br>**(2) GRANTING PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER [ECF No. 20]; AND**<br><br>**(3) GRANTING PLAINTIFF'S MOTION FOR CONTINUANCE UNDER RULE 56 [ECF No. 22]** |

Before the Court is a motion for appointment of a medical expert filed by Plaintiff Kory T. O'Brien ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, in which Plaintiff seeks the appointment of a medical expert to opine on the issue of "whether Plaintiff's chronic disease was and is accompanied by substantial pain." (ECF No. 16.)

1

Also before the Court are Plaintiff's motions to modify the scheduling order and for a continuance. (ECF Nos. 20, 22.) For the reasons set forth below, the Court **DENIES** Plaintiff's motion for appointment of a medical expert, **GRANTS** Plaintiff's motion to modify the scheduling order, and **GRANTS** Plaintiff's motion for a continuance.

## I. MOTION FOR APPOINTMENT OF A MEDICAL EXPERT

### A. Background

In his complaint, Plaintiff alleges that he was diagnosed with a serious medical need while incarcerated: degenerative disc disease ("DDD").[1] (ECF No. 1 at 3–6.) Plaintiff alleges his DDD is a chronic condition that causes him substantial pain, including severe neuropathic pain, and significantly impacts his daily activities. (*Id.*) In May 2017, Plaintiff underwent an MRI, which found that Plaintiff had "mild degenerative changes with loss of disc space height and disc protrusion at L5-S1 mild neural foraminal narrowing at lumbar levels." (*Id.* at 5.) Plaintiff further alleges that Defendants Sajib Saha, David Clayton, and Margaret Deel (collectively, "Defendants"), all doctors who worked at RJD for the California Department of Corrections and Rehabilitation ("CDCR"), were aware of Plaintiff's serious medical need and Dr. Saha and Dr. Clayton prescribed him pain medications for his DDD. (*Id.* at 2–6.)

Plaintiff alleges that in May/June 2019, Defendants ceased all medication prescribed to Plaintiff to help control his pain and he is now in "sever[e] intractable chronic pain" and cannot walk. (*Id.* at 6–8.) Specifically, on May 20, 2019, Dr. Saha ordered that Plaintiff's morphine be tapered off. (*Id.* at 7, 13.) Further, on May 29, 2019, Dr. Clayton ordered the discontinuation of his neurological medication, gabapentin. (*Id.* at 6–7.) Prior to the discontinuation of his medication, Plaintiff's DDD was well controlled with pain

---

[1] At the time his complaint was filed, Plaintiff was incarcerated at Richard J. Donovan Correctional Facility ("RJD") and all incidents alleged in the complaint took place at RJD. (ECF No. 1 at 1.) In or around January 2020, Plaintiff was transferred to Valley State Prison. (ECF No. 6.)

medication and he was able to play soccer. (*Id.* at 7–8.) Plaintiff seeks relief in the form of "recommended treatment for sever[e] pain by hospital," which is presumably gabapentin. (*Id.* at 7, 9, 18.)

### B. Legal Standard

Under Federal Rule of Evidence 706, a court has discretion to appoint an expert witness on its own motion or pursuant to the motion of any party to the action. Fed. R. Evid. 706(a); *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1178 (E.D. Cal. 2011) ("The decision of whether to appoint an expert witness under Rule 706 is discretionary."); *see also Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) (finding the district court did not abuse its discretion in appointing an independent medical expert to help evaluate evidence under Rule 706). "A Rule 706 expert typically acts as an advisor to the court on complex scientific, medical, or technical matters." *Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014). Rule 706 "only allows a court to appoint a neutral expert." *Gorton*, 793 F. Supp. 2d at 1177 (citation omitted). In other words, a party may not seek appointment of an expert witness under Rule 706 "for his own benefit." *Id.* at 1177 n.6; *see also Allen v. Beard*, No. 3:16-CV-2713-MMA-KSC, 2018 WL 5819782, at *2 (S.D. Cal. Nov. 7, 2018) (noting the *in forma pauperis* statute, 28 U.S.C. § 1915, does not authorize the expenditure of public funds for expert witnesses).[2]

"The most important question a court must consider when deciding whether to appoint a neutral expert witness is whether doing so will promote accurate factfinding." *Id.* at 1179 (citation omitted). In considering this question, "[t]he touchstone is that expert witnesses should not be appointed . . . where not necessary or significantly useful for the

---

[2] Rule 706(a) permits a "district court to apportion all the cost [of an expert witness] to one side" in an appropriate case, as "when[] one of the parties in an action is indigent" and "the expert would significantly help the court." *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991), *vacated on other grounds sub nom.*, *Helling v. McKinney*, 502 U.S. 903 (1991), *judgment reinstated*, 959 F.2d 853 (9th Cir. 1991), *aff'd*, 509 U.S. 25 (1993).

trier of fact to comprehend a material issue in a case." *Id.* at 1181. In order to demonstrate necessity, "there must be some evidence, admissible or otherwise, that demonstrates a serious dispute that could be resolved or understood through expert testimony." *Id.*

Courts should also consider other factors when deciding if appointment of a neutral expert is appropriate. First, courts should consider "whether testimony from the parties' experts is sufficient to reveal the facts." *Id.* at 1182 (citation omitted). "Expert witnesses are rarely appointed under Rule 706 because the adversary system is usually sufficient to promote accurate factfinding." *Id.* However, where the plaintiff is an indigent prisoner proceeding *pro se*, courts should be cautious of a "wholly one-sided presentation of opinions on the issue." *Id.* (quoting *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996)). Next, courts should consider whether appointment of an expert witness is appropriate given the nature of the plaintiff's claims. *Id.* at 1184. In ruling on any motion, a court must "expressly articulate a reasoned explanation for its determination." *Id.* at 1178–79 (quoting *Gaviria v. Reynolds*, 476 F.3d 940, 945 (D.C. Cir. 2007)).

### C. Discussion

#### 1. Deliberate Indifference to Serious Medical Needs

Here, Plaintiff's first claim against Defendants is for deliberate indifference to serious medical needs under the Eighth Amendment.[3] (ECF No. 1 at 3–12.) In *Estelle v. Gamble*, the Supreme Court held that an inmate making an Eighth Amendment claim based on prison medical treatment must show "deliberate indifference to serious medical needs." 429 U.S. 97, 104 (1976). In the Ninth Circuit, courts determine whether such a showing has been met based on a two-part test. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The plaintiff must first "show a serious medical need by demonstrating that failure to treat

---

[3] Plaintiff's second claim is a First Amendment claim for retaliation. (ECF No. 1 at 13–16.) Plaintiff's motion focuses on the need for a medical expert with respect to Plaintiff's Eighth Amendment deliberate indifference claim only. Accordingly, the Court focuses on Plaintiff's Eighth Amendment claim herein, but the reasoning of this Order applies to all of Plaintiff's claims.

a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 1096 (internal quotations omitted). Such injuries include (1) those that "a reasonable doctor or patient would find important and worthy of comment or treatment"; (2) "the presence of a medical condition that significantly affects an individual's daily activities"; and (3) "the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

After making a showing of a serious medical need, the plaintiff must show that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. This requirement is "less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because '[the] State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin*, 974 F.2d at 1060 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

Accordingly, the Ninth Circuit has instructed courts to consider two separate elements when determining whether defendants were deliberately indifferent. First, the plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need." *Jett*, 439 F.3d at 1096. This element "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (citation omitted). The plaintiff, however, must be able to show that defendants were subjectively aware of the risk of serious harm. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). Subjective awareness "may be shown by circumstantial evidence where the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003). Second, the plaintiff must show that he was harmed by the indifference. *Jett*, 439 F.3d at 1096.

///

///

2.     Analysis

In his motion, Plaintiff seeks an expert because "[t]he issue of whether [his] chronic disease was and is accompanied by substantial pain is an issue that should be explored by an impartial expert witness." (ECF No. 16 at 3.)  Plaintiff argues, rightly, that to establish an Eighth Amendment violation he "must show that the course of treatment [Defendants] chose was medically unacceptable under the circumstances," and that Defendants "chose this course in conscious disregard of an excessive risk to [his] health." (*See id.* (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).)  A mere "difference of opinion," on the other hand, "between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc).

In evaluating Plaintiff's motion, the Court has the benefit of being able to review Defendants' motion for summary judgment.  The Court's review of Defendants' motion indicates that a neutral expert witness will not promote accurate factfinding in this case.  In their motion, Defendants do not dispute the objective medical findings underlying Plaintiff's DDD and they have not terminated all treatment for Plaintiff's DDD.  Rather, the core of the dispute is that Plaintiff seeks specific medication (*i.e.*, gabapentin) and Defendants have refused to continue prescribing this medication.

In determining whether gabapentin is appropriate to treat Plaintiff's DDD, the Court has the benefit of the following sources of information: (1) an April 18, 2019 memorandum from the California Correctional Health Care Services ("CCHCS") regarding "gabapentin's place in therapy," noting that the FDA has only approved gabapentin for the treatment of partial seizures and postherpetic neuralgia, and urging health care providers "to limit prescribing gabapentin to its FDA-approved indications as clinically appropriate" (ECF No. 17-6 at 155); (2) an October 11, 2018 memorandum from J. Clark Kelso, Receiver of CDCR's medical services unit under the *Plata v. Schwarzenegger* settlement,

entitled "*Treatment to Reduce the Burden of Disease and Deaths from Opioid Use Disorder*," which addresses various research studies/papers and the need to reduce the substantial number of patients within CDCR who have substance and/or opioid use disorders due to the high rate of drug overdoses in California's prisons (*id.* at 151–53); (3) CCHCS care guidelines regarding use of gabapentin (ECF No. 17-7 at 2–3); (4) United States Centers for Disease Control and Prevention ("CDC") guidelines for use of opiates in the treatment of chronic pain (*id.* at 2); (5) the opinion of Bennett Feinberg, MD, the Chief Medical Consultant for the CCHCS Office of Legal Affairs (ECF No. 17-5); (6) a declaration from each physician Defendant (ECF Nos. 17-2; 17-3; 17-4); and (6) nearly 150 pages of Plaintiff's medical records, dating from July 2017 through June 2020 (ECF No. 17-6 at 5–149).

Given the foregoing, the Court finds that an expert witness is not necessary and would not be significantly useful to the factfinder to comprehend a material issue in this case. *See Gorton*, 793 F. Supp. 2d at 1181. The medical facts of this case are not complex. Plaintiff's claims do not raise "probing, complex questions" or require consideration of complex scientific evidence. *See Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997); *McKinney*, 924 F.2d at 1511. Moreover, the Eighth Amendment "deliberate indifference" standard does not demand an expert, nor special consideration by the courts, because lay people generally are able to understand the severity of medical issues. *See Allen*, 2018 WL 5819782, at *2–3.

In his motion, Plaintiff further argues that he would be prejudiced from having a fair trial because his condition and records have only been reviewed by CDCR-affiliated individuals and he is not a medically trained professional. (ECF No. 16 at 3–5.) However, given the variety of sources above, including FDA and CDC guidelines on the appropriate use of gabapentin, the Court finds that the factfinder is not receiving a one-sided view of the issue that would prejudice Plaintiff. *See Gorton*, 793 F. Supp. 2d at 1182. Given the foregoing, the Court **DENIES** Plaintiff's motion for appointment of a medical expert.

///

## II. MOTION TO MODIFY THE SCHEDULING ORDER

In a separate motion, Plaintiff seeks to modify the scheduling order to extend the expert deadlines. (ECF No. 20.) Plaintiff seeks an extension because of the pending motion for appointment of a medical expert and limited prisoner movement due to COVID-19. (*Id.* at 1.) For good cause shown, the motion is **GRANTED**. Accordingly, the Court modifies the scheduling order as set forth below.

## III. MOTION FOR A CONTINUANCE

Plaintiff also seeks to continue the deadline by which to file his opposition to Defendants' motion for summary judgment. (ECF No. 22.) Plaintiff requests to continue the deadline to file his opposition until the discovery deadline in the scheduling order because he needs additional time to complete discovery in order to obtain facts to oppose Defendants' motion. (*Id.* at 1–2.) For good cause shown, the motion is **GRANTED**. Accordingly, the Court modifies the briefing schedule on Defendants' motion for summary judgment as set forth below.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's motion for appointment of a medical expert, **GRANTS** Plaintiff's motion to modify the scheduling order, and **GRANTS** Plaintiff's motion for a continuance.

Accordingly, the Court modifies the scheduling order (ECF No. 8) as follows:

1. The parties shall designate their respective experts in writing and comply with the disclosure provisions in Federal Rule of Civil Procedure 26(a)(2)(A) and (B) by **November 27, 2020**.
2. The date for exchange of rebuttal experts and supplemental reports is **December 11, 2020**.

The Court further modifies the briefing schedule (ECF No. 18) on Defendants' motion for summary judgment as follows:

1. Plaintiff's opposition to Defendants' motion for summary judgment (ECF No. 17) must be filed and served on all parties no later than **November 27, 2020**.

2. If Plaintiff does file and serve an opposition, Defendants must file and serve a reply to Plaintiff's opposition by **December 11, 2020**.

3. Thereafter, the Court will, in its discretion and unless otherwise ordered, consider Defendants' motion pursuant to Fed. R. Civ. P. 56 on the moving papers and without oral argument pursuant to CivLR 7.1(d)(1).

**IT IS SO ORDERED.**

Dated: October 30, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge