UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORY T. O'BRIEN,<br><br>                              Plaintiff,<br><br>v.<br><br>SAJIB SAHA; DAVID CLAYTON; and MARGARET DEEL,<br><br>                              Defendants. | Case No.:  19-CV-1957-JLS (JLB)<br><br>**ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS, (2) ADOPTING REPORT AND RECOMMENDATION IN ITS ENTIRETY, AND (3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF EACH CLAIM OF PLAINTIFF**<br><br>(ECF Nos. 17, 29) |

Presently before the Court is Defendants Sajib Saha, M.D. ("Dr. Saha"), David Clayton, M.D. ("Dr. Clayton"), and Margaret Deel, M.D.'s ("Dr. Deel") (collectively, "Defendants") Motion for Summary Judgment, or in the Alternative, Summary Adjudication of Each Claim of Plaintiff ("Mot.," ECF No. 17), as well as Plaintiff Kory T. O'Brien's opposition thereto ("Opp'n," ECF No. 23) and Defendants' reply in support thereof (ECF No. 24).  Also before the Court is Magistrate Judge Jill L. Burkhardt's Report and Recommendation ("R&R," ECF No. 29) advising the Court to grant Defendants'

1

Motion, as well as Plaintiff's Objections to the R&R ("Objs.," ECF No. 30).  Having carefully considered Plaintiff's Complaint ("Compl.," ECF No. 1), Magistrate Judge Burkhardt's R&R, the Parties' arguments, and the law, the Court **OVERRULES** Plaintiff's Objections, **ADOPTS** the R&R in its entirety, and **GRANTS** Defendants' Motion.

BACKGROUND

Magistrate Judge Burkhardt's R&R contains a thorough, detailed, and accurate recitation of the relevant facts and procedural history.  *See* R&R at 2–24.  This Order incorporates by reference the background as set forth therein.[1]

LEGAL STANDARDS

**I.    Report and Recommendation**

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties in connection with a magistrate judge's R&R.  The district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).  However, in the absence of timely objection, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

**II.    Summary Judgment**

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense.  Summary judgment is

---

[1] Although Plaintiff disputes the Declaration of Bennett Feinberg, MD ("Feinberg Decl.," ECF No. 17-5) to the extent it relies on "Defendants['] assertion that Plaintiff's pain was adequately controlled by the prescribed medication," *see* Objs. at 22, Plaintiff does not appear to take issue with the R&R's recitation of the relevant facts, which relies extensively on the copies of Plaintiff's medical records submitted by both Defendants and Plaintiff, as well as documents of which Magistrate Judge Burkhardt took judicial notice and portions of the Feinberg Declaration that Plaintiff does not dispute.

2

appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact.  *Id.* (quoting Fed. R. Civ. P. 56(c)).  When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).  "This is true, even when the party against whom the motion for summary judgment is directed has not filed any opposition."  *Cristobal v. Siegel*, 26 F.3d 1488, 1495 (9th Cir. 1994) (citing *Sheet Metal Workers' Int'l Ass'n. v. Nat'l Labor Relations Bd.*, 716 F.2d 1249, 1254 (9th Cir. 1983).  "[W]here no evidence is presented in opposition to the motion, summary judgment should not be granted if the evidence in support of the motion is insufficient."  *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 967 (9th Cir. 1981) (citations omitted).

## ANALYSIS

Plaintiff's Complaint under the Civil Rights Act, 42 U.S.C. § 1983, asserts two claims: (1) deliberate indifference to Plaintiff's serious medical need in violation of the Eighth Amendment (as to all Defendants), and (2) First Amendment retaliation (as to Drs.

Saha and Clayton).  *See generally* Compl.  Defendants moved for summary judgment, arguing that (1) there is no evidence that Defendants were deliberately indifferent to Plaintiff's serious medical needs, *see* Mot. at 19–22; (2) there is no evidence to support elements two through five of Plaintiff's retaliation claim, *see id.* at 22–24; and (3) Defendants are entitled to qualified immunity, *see id.* at 24–26.

Magistrate Judge Burkhardt's R&R recommends that the Court grant Defendants' Motion.  *See* R&R at 48.  First, the R&R finds that Defendants established that they were not deliberately indifferent to Plaintiff's serious medical need and that Plaintiff failed to raise a genuine issue for trial on the issue of deliberate indifference, and therefore the R&R recommends that the Court grant Defendants' Motion as to Plaintiff's claim for deliberate indifference to his serious medical need.  *See id.* at 40–41.  Second, the R&R concludes that Plaintiff failed to raise a genuine issue of material fact that Drs. Saha and Clayton's alleged actions did not reasonably advance a legitimate correctional goal, and therefore the R&R recommends that the Court grant Defendants' Motion as to Plaintiff's retaliation claim.  *See id.* at 46–48.  Because Magistrate Judge Burkhardt determined that Plaintiff failed to raise any triable issue of material fact as to his asserted claims, she did not address Defendants' qualified immunity defense.  *Id.* at 48 n.23.

Plaintiff's Objections are not a model of clarity; however, Plaintiff indicates that "[he] believes that the Magistrate Judge made an error in her understanding of the Plaintiff's claim and Plaintiff's objections to Defendant's Motion for Summary Judgment." Objs. at 2.  As to his Eighth Amendment claim, Plaintiff claims there is a triable issue as to "Defendants [sic] 'failure to provide continuous and effective pain-relieving medication for prisoner known to have severe chronic pain,'" as well as "Defendants' 'persistence in a course of treatment known to be ineffective.'" *Id.* (citations omitted).  Plaintiff contends that Defendants' treatments for his somatic pain after discontinuing his morphine— including Tylenol (acetaminophen), non-steroidal anti-inflammatory drugs ("NSAIDs") (ibuprofen, naproxen), epidural steroid injections, Voltaren (diclofenac) gel, camphor-menthol and/or capsaicin topicals, physical therapy, and cognitive behavioral therapy—

were "a continuation of past failed ineffective treatments" that were inappropriate for his pain and/or his other medical conditions. *Id.* at 5–12. Plaintiff argues that, by June 7, 2019, only Tylenol was prescribed for his somatic pain from his degenerative disc disease ("DDD"). *Id.* at 12.

As for Plaintiff's neuropathic leg pain, Plaintiff again disputes whether any of Defendants' treatments after the discontinuation of his Neurontin (gabapentin)—including Elavil (amitriptyline), Cymbalta (duloxetine), Triliptal (oxcarbazepine), magnetic resonance imaging ("MRI"), and outside hospital visits—were appropriate for his pain and/or other medical conditions. *Id.* at 13–18. Plaintiff contends that as of July 15, 2019, he was provided "no neurological pain medication." *Id.* at 19. Further, Plaintiff argues that there is a triable issue "as to whether Defendants used a deliberately indifferent policy that deprived the Plaintiff of his constitutional right to receive adequate medical care thereby causing his unnecessary or wanton pain." *Id.* at 19–20.

As to the retaliation claim, Plaintiff objects to the R&R's finding that "the Plaintiff failed to raise a triable issue of fact as to the first element . . . with respect to Dr. Saha's notation of his manipulative behavior," as he claims that "Defendants did not move for Summary Judgment on the fact that their [sic] was no genuine issue of retaliation based on notations." *Id.* at 25. He also disputes the R&R's statement "that it was later confirmed that Plaintiff was refusing to take his heart medication." *Id.* at 25–26. Plaintiff claims that the fact that he continued having high blood pressure after Dr. Saha ordered for Plaintiff to receive his blood pressure medication from a nurse shows that Plaintiff was not manipulative and thus this notation was false. *Id.* at 27–28. Plaintiff also objects to the R&R's conclusion that removal of Plaintiff's neurological medication served a legitimate penological interest. *Id.* at 28. Plaintiff claims that, because Dr. Saha did not start tapering his medication when the issue of safety and security was first brought to his attention, the discontinuation had "no peneological [sic] interest." *Id.* at 29–30.

The Court reviews *de novo* those portions of Magistrate Judge Burkhardt's R&R to which Petitioner objects and reviews for clear error the remainder of the R&R.

**I.      Petitioner's Objections**

   **A.      *Eighth Amendment Claim***

   Plaintiff asserts that a triable issue of material fact remains as to whether Defendants were deliberately indifferent in failing to provide him with continuous and effective pain-relieving medication for his severe and chronic somatic pain and persisting in a course of treatment they knew to be ineffective.  Objs. at 2.  Specifically, Plaintiff argues that, by June 7, 2019, only Tylenol was prescribed for his somatic pain, *id.* at 12, and that the various treatments tried after tapering him off his morphine were either inappropriate or treatments he had tried and failed previously, *id.* at 5–12.

   Plaintiff also asserts that a triable issue of material fact remains as to whether Defendants were deliberately indifferent in failing to provide him with continuous and effective pain-relieving medication for his severe and chronic neuropathic pain and persisting in a course of treatment they knew to be ineffective.  *Id*. at 2.  Specifically, Plaintiff argues that, as of July 15, 2019, he was provided "no neurological pain medication," *id.* at 19, and that the various treatments tried after tapering him off his gabapentin were either inappropriate or treatments he had tried and failed previously, *id.* at 13–18.

   Finally, Plaintiff appears to argue that the April 18, 2019 memorandum outlining the California Correctional Health Care Services ("CCHCS") policy on gabapentin was an unconstitutional "blanket prohibition" on a medication.  *Id.* at 13–14.

   *1.      CCHCS Gabapentin Policy*

   As an initial matter, the Court does not find the CCHCS gabapentin policy to be unconstitutional.  While it is true that courts within the Ninth Circuit have ruled that "[a] medication policy is unconstitutional when it is '[a] blanket policy denying narcotic pain medication to inmates in the general population regardless of medical need," on its face, the CCHCS policy in question is not such a policy.  *Quigg v. Linder*, No. CV1700035GFBMMJTJ, 2020 WL 7647372, at *8 (D. Mont. Nov. 24, 2020) (quoting *Franklin v. Dudley*, No. 2:07-CV-2259 FCD KJN, 2010 WL 5477693, at *7 (E.D. Cal.

Dec. 29, 2010), *adhered to*, No. 2:07-CV-2259 KJM KJN, 2011 WL 2493770 (E.D. Cal. June 22, 2011)), *report and recommendation adopted*, No. CV-17-35-GF-BMM, 2020 WL 7258681 (D. Mont. Dec. 10, 2020).

The CCHCS gabapentin policy did not deny inmates access to gabapentin regardless of medical need. Rather, it "urge[d] health care providers to limit prescribing gabapentin to its FDA-approved indications as clinically appropriate." Feinberg Decl. Ex. D. This gave doctors the discretion to continue to prescribe gabapentin for indications other than the FDA-approved indications of partial seizures and postherpetic neuralgia. *See id.* Plaintiff brings forth no evidence to contradict this plain reading of the policy. Accordingly, the CCHCS gabapentin policy was not an unconstitutional blanket prohibition on inmates' use of gabapentin. *See Quigg*, 2020 WL 7647372, at *9.

### 2.    Deliberate Indifference to Plaintiff's Pain

"[A] prison official violates the [Cruel and Unusual Punishments Clause of the] Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, Plaintiff must allege the prison official he seeks to hold liable had a "'sufficiently culpable state of mind' . . . . [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety"; . . . he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). A claim of medical malpractice or negligence, without

more, is insufficient to make out a violation of the Eighth Amendment. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Nor does a simple difference of opinion between a prisoner and prison medical authorities regarding proper treatment rise to the level of deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Although Defendants provide ample evidence that Plaintiff showed no outward signs of severe pain—*see, e.g.*, CDCR 00032–33, CDCR00056, CDCR 00100–01, CDCR 00106–09, CDCR 00116–17, CDCR 00124–25, CDCR 00135–37—Plaintiff provides at least some evidence that treating physicians may have perceived him to be in pain—*see, e.g.*, CDCR 00128–29 (July 31, 2019 Tri-City Medical Center Emergency Department Report indicating a diagnosis of "acute on [sic] chronic low back pain" and "moderate L5-S1 degenerative disc disease," and showing Plaintiff was administered medication at the hospital to treat his pain).  He also provides substantial evidence of his own subjective complaints of pain.  *See, e.g.*, Opp'n Ex. C at 96–119, 123–60.  "In resolving summary judgment motions, a court must not weigh the evidence, make credibility determinations, or draw inferences from the facts adverse to the non-moving party." *His & Her Corp. v. Shake-N-Go Fashion, Inc.*, 572 F. App'x 517, 518 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Thus, for purposes of the present Motion, the Court accepts that Plaintiff experienced chronic somatic and neuropathic pain.

However, even accepting that Plaintiff was in pain and viewing the evidence and any inferences drawn therefrom in the light most favorable to Plaintiff, the Court finds that no reasonable juror could find that Defendants were deliberately indifferent to Plaintiff's chronic pain.  As an initial matter, it is undisputed that numerous comorbidities are noted in Plaintiff's medical files.  Plaintiff's medical records indicate that he suffered from, among other ailments and past procedures, bipolar depression, a coronary angioplasty, dyslipidemia, fatty liver, gastroesophageal reflux disease ("GERD"), intervertebral disc disorder with radiculopathy of lumbosacral region, lactose intolerance, right foot pain,

rotator cuff surgery, and a tear of the right glenoid labrum.  *See, e.g.*, CDCR 00126; *see also* CDCR 00032 (noting that "Patient has multiple comorbidities including fatty liver, coronary artery disease status post angioplasty").  Plaintiff acknowledges many of his other ailments in his briefing.  *See, e.g.*, Opp'n at 5 (noting Plaintiff has cardiovascular disease and bipolar disorder); Objs. at 3 (indicating Plaintiff has arthritis in his shoulder and heartburn).

It also is undisputed, even if Plaintiff disputes that he in fact had such a history, that a history of illicit drug use is noted in Plaintiff's medical files.  *See* CDCR 00007 ("Social History" in record from November 2017 appointment noting Plaintiff had history of cocaine, ecstasy, marijuana, and methamphetamine use at a frequency of 3–4 times per week that interfered with work and home); CDCR 00028 (April 25, 2019 message from Chief Physician and Surgeon Ryan Barenchi to Dr. Saha noting Plaintiff's "[h]istory of polysubstance abuse").  And although Plaintiff argues that his negative serum screen for opiates was erroneous, he offers no evidence to contradict the fact that a negative drug screen appears in his medical records despite the fact that he allegedly was taking 15 mg of morphine twice daily at the time of testing.  *See* CDCR 00030; CDCR 00032.  From this, it is reasonable to infer, as Dr. Saha did, that Plaintiff likely was diverting his medication, *see* CDCR 00032; and Plaintiff provides no evidence from which to draw a contrary inference.

It further is undisputed that, because of his comorbidities and drug history, Plaintiff was not a good candidate for certain treatments and medications.  For example, Plaintiff's grievance forms claim that Cymbalta was potentially problematic for his bipolar disorder and heart conditions, treated with blood thinners, *see* Opp'n Ex. C at 122, 130; as well as his fatty liver, *see id.* at 128; and his GERD, treated with Prilosec, *see id.* at 130.  Plaintiff further claims that NSAIDs interact with, for example, his low-dose aspirin and blood pressure medication, *see* Objs. at 7 (citing Ex. at 23, 25, 27); epidural steroid injections are

/ / /

/ / /

contraindicated in patients with congestive heart failure,[2] *see id.* at 8 (citing Ex. at 15); Elavil (amitriptyline**)**, a tricyclic antidepressant, is contraindicated in those with cardiovascular disorder, GERD, high blood pressure, and bipolar disorder, *see id.* at 14 (citing Ex. at 17); and Cymbalta can be contraindicated in those with bipolar disorder, *see id.* at 15 (citing Ex. at 18).    Plaintiff's medical records also note many of these contraindications.  *See, e.g.*, CDCR 00106–07 (noting Plaintiff not a candidate for tricyclic antidepressants because of his "ongoing cardiac issues"); CDCR 00106 (noting Plaintiff not a candidate for Lyrica given his history of possible drug diversion); CDCR 00107 (noting "[Plaintiff] was advised to avoid naproxen or ibuprofen as patient on dual platelet therapy"); CDCR 00110 (acknowledging Cymbalta was activating Plaintiff's bipolar disorder).  Finally, it is undisputed that, after Plaintiff was transferred to another facility, he was again found to "not [be] a candidate for gabapentin or Lyrica according to CCHCS guidelines."  CDCR 00142.

　　　　Given Plaintiff's comorbidities, history of drug abuse, and reasonably suspected drug diversion, even viewing the evidence in the light most favorable to Plaintiff, the Court concludes no reasonable juror could find that Defendants were deliberately indifferent to Plaintiff's pain in tapering him off morphine and gabapentin and pursuing a variety of other pain treatment options over a period of many months.  The Chronic Pain Provider-Patient Agreement/Informed Consent for Opioid Pain Medication Plaintiff signed clearly indicates that "[m]y provider may request urine or blood drug screens from time to time to monitor my use of pain medications."  CDCR 00009.  Further, "[i]n the event that these tests indicate that my use of opioids or other medications presents a health risk to myself or to others, my provider may taper and stop the opioid medication."  *Id.*  Plaintiff initialed this paragraph. *Id.*  Plaintiff was administered a serum drug screen consistent with this contract, which showed Plaintiff was negative for opioids despite being prescribed morphine twice

---

[2] The Court notes, however, that there is no indication in Plaintiff's medical files that he was ever diagnosed with congestive heart failure.

19-CV-1957-JLS (JLB)

a day.  *See* CDCR 00030, CDCR 00032.  And, consistent with the contract, when Dr. Saha decided to taper Plaintiff's morphine on May 20, 2019, he indicated that this result meant "possible drug diversion which imposes [sic] potential risks to other inmates."  CDCR 00032.  He also noted that there was no clear indication for continuing morphine, as Plaintiff was "playing soccer regularly without any difficulty" and "currently performing ADLs [activities of daily living] without any objective findings of ADL dysfunction from chronic lower back pain."  CDCR 00032–33.  Dr. Saha noted he "[w]ill refer patient to mental health.  Consider referral to substance abuse disorder treatment team in future, if patient agrees.  Consider physical therapy in future.  Will start capsaicin cream as needed.  Continue pain medication ibuprofen or naproxen from canteen as needed.  Continue to monitor."  CDCR 00033.  Dr. Saha further noted that he would "continue gabapentin now and follow patient in 1 month, consider switching gabapentin to other medication."  *Id.*

On May 22, 2019, Dr. Saha indicated in Plaintiff's medical record that Plaintiff had been referred to mental health for pain management and would be referred to physical therapy for his chronic lower back pain.  CDCR 00053.  A notation from that day's visit indicates an "Automatic Refill" for Plaintiff's gabapentin prescription for 180 days.  *Id.*  On May 23, 2019, Plaintiff complained during an appointment with a nurse that the capsaicin cream was not working.  CDCR 00056.  Dr. Saha saw Plaintiff the following day, and noted he would discontinue the capsaicin cream, but that "[Plaintiff] currently has Voltaren gel."  CDCR 00060.  He discussed the potential side effects of NSAIDs and their interaction with aspirin with Plaintiff and noted that "[Plaintiff] declines to start other pain medication including antidepressants Cymbalta or antiseizure medication carbamazepine."  *Id.*  Dr. Saha further ordered an x-ray of Plaintiff's spine as well as lab work "to rule out any active infection or inflammation," and gave Plaintiff a walker and mobility vest.  *Id.*  He indicated that an MRI might be considered in the future "if pain persist[s] after physical therapy or abnormal x-ray findings."  *Id.*

When Dr. Clayton decided to taper Plaintiff off his gabapentin prescription during a May 29, 2019 appointment, he noted that "[Plaintiff] does not want to go to physical

therapy and is adamant about needing narcotics and gabapentin." CDCR 00101. Dr. Clayton informed Plaintiff that "the alternative approved medications for chronic pain [were] Elavil[,] nortriptyline and Cymbalta." *Id.* Plaintiff refused Elavil and nortriptyline, "so we will start Cymbalta at a low dose and titrate up to effect" while "[t]he gabapentin will be tapered off over 2 weeks." *Id.* A May 31, 2019 x-ray showed mild L5-S1 arthrosis. CDCR 00102. During a June 7, 2019 appointment, Plaintiff indicated that he was not interested in lower back surgery, and Dr. Saha indicated that "[Plaintiff would] be referred to physical therapy and mental health for chronic pain management." CDCR 00107. Dr. Saha noted that Plaintiff was not a good candidate for Lyrica because of his history of alleged drug diversion, nor was he a good candidate for tricyclic antidepressants given his cardiac issues. CDCR 00106–07. Dr. Saha noted that Plaintiff should "[c]ontinue Voltaren gel as needed," "[c]ontinue stretching exercise," and "[c]ontinue Tylenol as needed."[3] CDCR 00108. Plaintiff would tell Dr. Saha "if interested for epidural injection." *Id.*

Plaintiff saw a psychiatrist, Dr. Rajesh Patel, on June 10, 2019. CDCR 00110. Dr. Patel noted that the Cymbalta appeared to be activating Plaintiff's bipolar disorder, and he indicated he would send a message to Dr. Saha suggesting that he "look into option of Trileptal or Lyrica for [p]ain" instead. *Id.* Plaintiff showed up to physical therapy on June 12, 2019, but he conveyed that he "feels very strongly that therapy won't do anything for him." CDCR 00114. Thus, "[d]ue to patient's lack of interest in therapy and his knowledge of HEP, further treatment is not warranted at this time." *Id.* Dr. Saha saw Plaintiff on June 13, 2019, and indicated in response to Dr. Patel's message that "[Plaintiff] is not a good candidate for controlled substance like Lyrica," but that, "[d]ue to multiple side effects including hyponatremia will defer Trileptal to psychiatry." CDCR 001116. Accordingly, Dr. Saha indicated that "[Plaintiff] will be referred to psychiatry again for possible trial of Trileptal." *Id.* On June 28, 2019, Plaintiff was told to "[c]ontinue activity modification"

---

[3] Plaintiff was switched from NSAIDs to Tylenol, as he was put on Plavix following a June 1, 2019 hospital visit for cardiac issues. *See* CDCR 00107; Feinberg Decl. ¶ 39.

19-CV-1957-JLS (JLB)

and "[c]ontinue support with back brace, walker, cane." CDCR 00122. That same date, "[Plaintiff] was advised to use diclofenac gel for lower back pain," and Dr. Saha noted he "[would] order MRI lumbar spine as worsening of symptoms with new symptoms tingling numbness in the foot." *Id.* Notes from that appointment also indicate Plaintiff had been switched from Cymbalta to lamotrigine. *Id.* Notes from a July 15, 2019 appointment indicated that there was a "[p]ending MRI lumbar spine." CDCR 00125.

Plaintiff saw a nurse on July 31, 2019 for lower back pain and weakness in his right lower extremity. CDCR 00126. Plaintiff was sent to Tri-City Medical Center to rule out a cord compression. *Id.* At the Tri-City Medical Center's Emergency Department, an x-ray indicated moderate L5-S1 degenerative disc disease. CDCR 00129. Plaintiff was released, with a recommendation of "gabapentin, Elavil, or naproxen for pain." *Id.* On August 6, 2019, Plaintiff followed up with Dr. Saha, who reviewed Tri-City's recommendations with Plaintiff, explaining that "[Plaintiff] is not a candidate for NSAIDs [e.g., naproxen] as patient on dual antiplatelet therapy, increased risk of bleeding." CDCR 00130. Nor was Plaintiff a candidate for Elavil, a tricyclic antidepressant, because of his "history of cardiac disease." *Id.* Finally, Dr. Saha concluded that Plaintiff was "not a good candidate for gabapentin" because of the recent memorandum and the history of drug abuse noted in his medical record. *Id.* Plaintiff's medical record from that appointment further noted that Plaintiff then became argumentative and left. *Id.* Dr. Saha noted that there was a "[p]ending epidural cortisone injection"; however, because Plaintiff left before his physical examination, Dr. Saha could not evaluate him for orthopedic shoes. *Id.* On October 10, 2019, Plaintiff refused the epidural injection, saying he "need[ed an] MRI first" and that he "had [an] epidural in 2017." CDCR 00140.

Plaintiff's medical records evidence a thoughtful and multidisciplinary approach to his pain management, taking into account CDCR guidelines as well as Plaintiff's drug and medical history. Despite the limited treatment options available in light of Plaintiff's medical and drug history, Plaintiff repeatedly refused therapies suggested by Defendants to treat his chronic pain, including an antidepressant like Cymbalta or an antiseizure

medication like carbamazepine, *see* CDCR 00060; nortriptyline, *see* CDCR 00101; physical therapy, *see* CDCR 00114; and epidural cortisone injections, *see* CDCR 00140. Although Plaintiff claims he "tried and failed" some of these treatment options previously, his medical records only note that he "failed NSAIDs, failed trileptal [i.e., oxcarbazepine]," with the reason given being "unimproved," and provide no further detail as to, for example, when Plaintiff tried these therapies or in whose opinion he failed them. *See, e.g.*, CDCR 00053. At any rate, Plaintiff was already not a good candidate for NSAIDs once he started Plavix, at which point he discontinued that treatment. *See* Feinberg Decl. ¶ 39.

Despite the limited treatment options available and Plaintiff's refusal to try recommended therapies, the compelling evidence brought forth by Defendants does not show, as Plaintiff suggests, that, as of June 7, 2019, only Tylenol was prescribed for his somatic pain. Plaintiff had been instructed to use Voltaren gel for his lower back pain. *See* CDCR 00060; CDCR 00108; CDCR 00125. Plaintiff was also being monitored by mental health for pain management. *See* CDCR 00053. The evidence similarly does not support the conclusion, advanced by Plaintiff, that he was provided no medication for his neuropathic pain as of July 15, 2019. Even viewing all facts and inferences in Plaintiff's favor, his medical records indicate that, as of that date, he was "currently on lamotrigine" in a section discussing his chronic back pain. CDCR 00125.[4] And, as of August 6, 2019, Plaintiff was taking oxcarbazepine (Trileptal). *See* CDCR 00130. Dr. Patel's message to Dr. Saha indicates that he was recommending Trileptal "for pain control instead of Gabapentin," and noted that it "also would help with mood stabilization." CDCR 00113. Further, during a September 26, 2019 appointment, Plaintiff's practitioner noted in Plaintiff's record that he was prescribed oxcarbazepine "for mental health," but that it "also provides some pain relief." CDCR 00136.

"Because defendants attempted to treat plaintiff's pain, they cannot be said to have been 'indifferent' to it," much less deliberately so, and "[a]lthough plaintiff disagreed with

---

[4] Indeed, it looks like Plaintiff was on lamotrigine at least as of June 28, 2019. *See* CDCR 00122.

the doctors' treatment decisions, merely disagreeing does not show a triable issue in support of plaintiff's claim." *DeGeorge v. Mindoro*, No. 17-CV-06069-LHK, 2019 WL 2123590, at *7 (N.D. Cal. May 15, 2019).  Accordingly, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact to support his claim that Defendants were deliberately indifferent to his serious medical need.  The Court therefore **OVERRULES** Plaintiff's Objections, **ADOPTS** the R&R, and **GRANTS** Defendants' Motion as to Plaintiff's Eighth Amendment claim.

### B.    *Retaliation Claim*

#### 1.    *Notation of Manipulative Behavior*

Plaintiff objects to the extent the R&R concludes that Dr. Saha's notation of Plaintiff's manipulative behavior was not an adverse action, as "Defendants did not move for Summary Judgment on the fact that their [sic] was no genuine issue of retaliation based on notations."  Objs. at 25.  He also objects to the extent the R&R concludes "that it was later confirmed that Plaintiff was refusing to take his heart medication."  *Id.* at 25–26.  Plaintiff claims the notation demonstrably is false, as he continued having high blood pressure after Dr. Saha ordered for Plaintiff to receive his blood pressure medication from a nurse.  *Id.* at 27–28.

First, reviewing Defendants' Motion *de novo*, the Court finds Plaintiff is incorrect in arguing that Defendants did not move for summary judgment on this ground.  The Motion clearly seeks "summary judgment on the grounds that there is no genuine issue of material law as to any material fact and Defendants are entitled to judgment as a matter of law."  Mot. at 1.  Specific to this argument, the Motion notes that "Plaintiff . . . alleges that in retaliation of his threat of legal action, Defendants [Drs. Saha and Clayton] took the adverse action of discontinuing his morphine and gabapentin prescriptions, *and noting his manipulative behavior in the medical file*."  Mot. at 22(citing Compl. at 14)) (emphasis added).  Defendants claim, however, that "there is no evidence of retaliation for an exercise of Plaintiff's First Amendment rights."  *Id.* at 1.  Although Defendants' analysis focuses on the discontinuation of Plaintiff's medication, the fact remains that Defendants raised the

issue and the fact that the only evidence offered by Plaintiff in support was the allegation in his Complaint, and Plaintiff, who has the burden of proof on this point, failed to bring forth sufficient evidence to establish that a triable issue of material fact exists on this point.

Rather, significant evidence supports the conclusion that Dr. Saha reasonably made the notation without any retaliatory motive. Dr. Saha first added the notation of "manipulative behavior" to Plaintiff's file on May 24, 2019. CDCR 00058. Specifically, Dr. Saha noted that "Patient was using cane, claiming that using cane making his right shoulder hurting [sic]. Patient has been asking to increase his morphine. Patient is very manipulative." *Id.* A further note on that date indicated that, "[s]ince decreasing dose of morphine on May 20, 2019 patient has been filing multiple 7362 claiming that his lower back pain is worsening, seen at TTA. Patient mentioned that his blood pressure is high because of lower back pain but suspicion for patient is not taking blood pressure pill, patient is very manipulative." CDCR 00060. Specifically, Dr. Saha noted that he had a "[s]uspicion patient is not taking blood pressure pill, trying to manipulate the system so that he can get pain medication. Will change blood pressure pill to NA [nurse administered] and will increase his lisinopril from 10 mg to 20 mg." CDCR 00059.

Further, there is significant evidence in the record that Plaintiff was failing to take his blood pressure medication as prescribed, and it is reasonable to infer from these facts that Plaintiff was doing so to obtain pain medication. For example, later that same afternoon, when Plaintiff reported to the pill line, his blood pressure was still elevated. CDCR 00063. Notes from a nurse visit that afternoon indicated that Plaintiff told the nurse that "the severe back pain keeps his BP high." CDCR 00064. However, the nurse noted that "[r]eview of his MAR shows that is [sic] has not been taking his antihypertensive medications," and that "[Plaintiff] refused to take lisinopril and carvedilol this morning and this afternoon"; after receiving his nurse-administered evening dose of carvedilol and lisinopril, however, Plaintiff "shows improved BP readings." CDCR 00064. On June 6, 2019, Plaintiff submitted a Health Care Services Request Form indicating, "I am not taking Lisinopril. I am taking Isoserbide and cardiloval for Blood Pressure! Blood Pressure is

good.  I do not want to lower my Blood Pressure to dangerously low levels, Legal Notice!"  CDCR 00105.  Notes from an appointment with Dr. Saha the following day indicate:  "Patient currently not taking lisinopril for last 1 week.  A detailed discussion done regarding importance of lisinopril, patient verbalized understanding.  Parameters placed for holding lisinopril."  CDCR 00108.

The only "evidence" Plaintiff offers in response is the fact that "[he] is a heart patient.  The Plaintiff has suffered a heart attack and would NEVER (emphasis added) put himself at risk of the pain or action of a heart attack by not taking his medication."  Objs. at 26.  Even drawing all inferences in favor of Plaintiff, this unsupported statement is insufficient to counter Defendants' evidence, including a grievance submitted by Plaintiff clearly indicating that Plaintiff was not taking one of his blood pressure medications.  *See* CDCR 00105.  How, Plaintiff asks, was his blood pressure still high after the May 24, 2019 appointment if the nurses were administering his medications?  Objs. at 27.  The logical inference is that the nurses were giving, but Plaintiff was not in fact swallowing, his medication, given that the lisinopril was nurse administered at the time Plaintiff himself admitted to not taking the medication.  CDCR00101 (noting lisinopril was nurse administered on May 29, 2019); CDCR 00105 (noting not taking lisinopril); CDCR 00107 (noting lisinopril nurse administered on June 7, 2019).  Accordingly, the Court finds that there is no evidence to support Plaintiff's claims that the notation that he was manipulative was made in retaliation for Plaintiff exercising his First Amendment rights; rather, the notation appears to have been well supported by the facts available to Plaintiff's medical providers at the time.

## 2.   *Legitimate Penological Interest*

Plaintiff argues that the fact that Dr. Saha did not start tapering Plaintiff off gabapentin when the issue of safety and security was first brought to his attention means that the discontinuation of the gabapentin had "no peneological [sic] interest."  Objs. at 29–30.  However, even drawing all facts and inferences in Plaintiff's favor, the Court disagrees.

17

The CCHCS memorandum outlining the new gabapentin policy was issued on April 18, 2019. *See* Feinberg Decl. Ex. D. On April 25, 2019, Chief Physician and Surgeon Ryan Barenchi sent Dr. Saha a message about Plaintiff titled "Opiate/gabapentin Review," asking Dr. Saha, "[i]n the spirit of patient safety and to promote safe prescribing practices," "to consider the above findings in any future decision making regarding" Plaintiff's opioid and gabapentin prescriptions. *See* CDCR 00028. The message noted, however, that "[t]he future treatment of this patient will be based on your own clinical judgment." *Id.* A serum drug screen performed on April 30, 2019, was negative for opiates in Plaintiff's system. *See* CDCR 00030. During Plaintiff's very next appointment with Dr. Saha on May 20, 2019, Dr. Saha decided to taper Plaintiff off morphine, given that "[t]here is no clear indication continuing for [sic] morphine, on the other hand due to negative drug screen test possible drug diversion which imposes potential risks to other inmates." CDCR 00032. Plaintiff left the appointment before he could be physically examined and said he would take the issue to court. *Id.* Dr. Saha noted that he "[w]ill continue gabapentin now and follow patient in 1 month, consider switching gabapentin to other medication." CDCR 00033.

A notation from a May 22, 2019 visit with Dr. Saha indicates an "Automatic Refill" was placed for Plaintiff's gabapentin prescription for 180 days. CDCR 00053. However, Plaintiff saw Dr. Clayton on May 29, 2019, at which time Dr. Clayton noted: "I agree with Dr. Saha that neither the morphine or gabapentin is indicated in this patient. Based on my examination he would do well with physical therapy and nonsteroidal anti-inflammatories as needed. He does not want to go to physical therapy and is adamant about needing narcotics and gabapentin." CDCR 00101. Dr. Clayton indicated that he would taper Plaintiff off gabapentin over a period of two weeks and place Plaintiff on Cymbalta in its place, starting "at a low dose and titrat[ing] up to effect." *Id.* Dr. Clayton notes that Plaintiff "became quite irate" and stormed off, and "[Plaintiff] was then overheard discussing strategies with other inmates how to obtain gabapentin and narcotics more effectively while he was leaving the trailer." *Id.*

1    This evidence, including the general timeline of events, strongly supports a finding

2    that the tapering of Plaintiff's gabapentin was supported by a reasonable penological

3    interest—namely, preventing drug diversion and/or abuse in the prison population. *See,*

4    *e.g.*, *Hicks v. Dotson*, 73 F. Supp. 3d 1296, 1305 (E.D. Wash. 2014) ("The DOC has a

5    legitimate penological goal in regulating prescription pain medication to avoid drug

6    abuse."); *Joseph v. Clayton*, No. 3:19-CV-2139-GPC-RBM, 2020 WL 804863, at *7 (S.D.

7    Cal. Feb. 18, 2020) (noting that "reducing prescription drug abuse and drug addiction

8    among the prison population" is a legitimate penological interest) (internal quotation marks

9    and citations omitted); *Miller v. California Dep't of Corr. & Rehab.*, No. 16-CV-02431-

10   EMC, 2018 WL 534306, at *18 (N.D. Cal. Jan. 24, 2018) (taking inmate off medication

11   "not appropriate for his medical condition also advances the legitimate penological goal of

12   reducing prescription drug abuse and drug addiction among the prison population"); *Juarez*

13   *v. Butts*, No. 215CV1996JAMDBP, 2020 WL 2306850, at *11 (E.D. Cal. May 8, 2020)

14   (noting that, "even if staff was incorrect to conclude that [plaintiff] intended to abuse his

15   medication, their assessment reflects a legitimate penological interest in preventing drug

16   abuse") (internal quotation marks and citation omitted), *report and recommendation*

17   *adopted*, No. 215CV1996JAMDBP, 2020 WL 3542193 (E.D. Cal. June 30, 2020), *order*

18   *rescinded* (July 1, 2020), and *report and recommendation adopted*, No.

19   215CV1996JAMDBP, 2020 WL 6871062 (E.D. Cal. Nov. 23, 2020); *Townsen v. Hebert*,

20   No. 313CV00223MMDVPC, 2015 WL 5782036, at *4 (D. Nev. Oct. 2, 2015) ("Courts

21   have repeatedly recognized inmates' health and safety as legitimate penological interests.")

22   (citations omitted).

23   Plaintiff fails to advance any evidence that Defendants' motivations were instead

24   retaliatory. While Plaintiff advances the "undisputed fact" (which Defendants dispute) that

25   "Defendant's [sic] acted in a Retaliatory manner," the evidence Plaintiff cites consists of

26   Defendants' statements that Plaintiff was "manipulative." *See* Opp'n at 44 (citations

27   omitted). But, for the reasons provided *supra*, the Court finds that there is no evidence that

28   such statements were retaliatory. And while Plaintiff makes much of the 180-day refill of

his gabapentin prescription on May 22, 2019, the fact remains that Dr. Saha had already determined he would consider switching Plaintiff's gabapentin prescription in a month, *see* CDCR 00033, and it appears that most of Plaintiff's medications were filled for periods as long or longer, *see* CDCR 00033 (360-day capsaicin topical cream prescription); CDCR 00060 (360-day prescriptions for carvedilol and lisinopril); CDCR 00101 (180-day duloxetine prescription); CDCR 00121 (360-day prescription for clopidogrel).

Accordingly, even drawing all facts and inferences in Plaintiff's favor, the Court finds that no jury could find on the present record that Defendants were not motivated by a legitimate penological interest in tapering Plaintiff off his gabapentin prescription. *See Miller*, 2018 WL 534306, at *17–18 (finding no reasonable jury could find in favor of plaintiff on his retaliation claim because, even if the tapering of his pain medication occurred after the alleged protected activity, "[the plaintiff] does not provide any competent evidence to dispute Defendants' evidence that the reduction and eventual elimination of the morphine reasonably advanced legitimate medical goals").

In light of the foregoing, the Court **OVERRULES** Plaintiff's Objections, **ADOPTS** the R&R, and **GRANTS** Defendants' Motion as to Plaintiff's retaliation claim.

## II. Remainder of the R&R

Petitioner does not object to the remainder of Magistrate Judge Burkhardt's R&R, including, *inter alia*, the R&R's conclusions that Plaintiff has a serious medical need, *see* R&R at 34–35; that Plaintiff fails to state a retaliation claim against Dr. Saha based on Dr. Saha's decision to taper his morphine, *see id.* at 43; that Plaintiff fails to state a retaliation claim against Dr. Saha based on Dr. Saha's notations of his history of drug use, *see id.* at 43–44; that Plaintiff fails to state a retaliation claim against Dr. Saha based on Dr. Saha's failure to reinstate his gabapentin prescription, *see id.* at 45–46; and that Plaintiff fails to state a retaliation claim against Dr. Clayton, *see id.* at 47; or the R&R's granting of Defendants' Request for Judicial Notice, *see, e.g.*, *id.* at 10 n.6, 14 n.7, 20 n.12, 21 n.13. Having found no clear error, the Court **ADOPTS** the remainder of the R&R.

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

In light of the foregoing, the Court **OVERRULES** Plaintiff's Objections (ECF No. 30), **ADOPTS** Magistrate Judge Burkhardt's R&R (ECF No. 29), and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 17).  As this Order concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  March 15, 2021

Hon. Janis L. Sammartino
United States District Judge

19-CV-1957-JLS (JLB)